```
 1                    UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF OHIO
 2                          WESTERN DIVISION

 3    UNITED STATES OF AMERICA,        Docket No. 18CR26

 4              Plaintiffs,            Toledo, Ohio

 5              v.                     October 22, 2018

 6    KARL J. ROGERS, JR.,

 7              Defendant.

 8    ------------------------------

 9                 TRANSCRIPT OF PRETRIAL HEARING
                 BEFORE THE HONORABLE JAMES G. CARR
10                  UNITED STATES DISTRICT JUDGE

11

12    APPEARANCES:

13    For the Plaintiffs:   Tracey Tangeman
                            Office of the U.S. Attorney
14                          Four SeaGate, Suite 308
                            Toledo, Ohio 43604
15                          (419) 242-5675

16

17    For the Defendant:
                            Reese Wineman
18                          6 West Main Street
                            Norwalk, Ohio 44857
19                          (419) 668-6840

20

21    Court Reporter:       Angela D. Nixon, RMR, CRR
                            1716 Spielbusch Avenue
22                          Toledo, Ohio 43624
                            (419) 260-5259
23

24    Proceedings recorded by mechanical stenography, transcript

25    produced by notereading.
```

```
 1              COURTROOM DEPUTY:  Case 3:18CR25, United States
 2   of America versus Karl Rogers.
 3              THE COURT:  Counsel, if you'll identify
 4   yourselves for the record, please?
 5              MS. TANGEMAN:  Tracey Tangeman on behalf of the
 6   government.
 7              MR. WINEMAN:  Good morning, Judge.
 8              THE COURT:  I have a vision issue, I can't
 9   recognize people, I'm sorry.
10              MR. WINEMAN:  That's quite all right.
11              THE COURT:  And you are?
12              MR. WINEMAN:  Reese Wineman, attorney for the
13   defendant, Your Honor.
14              THE COURT:  Okay.  And you may be seated just so
15   you can speak into the microphone.
16              MR. WINEMAN:  Yes.
17              THE COURT:  And I apologize, but Ms. Tangeman
18   knows, so, okay.  And understanding the matter comes on for
19   anticipated change of plea, but apparently your client
20   would like to exercise his right to stand trial; is that
21   correct?
22              MR. WINEMAN:  That's correct, Your Honor.
23              THE COURT:  Okay.  That is his right, of course.
24   How long, Ms. Tangeman, is trial going to take?
25              MS. TANGEMAN:  Your Honor, I think it can be
```

1    concluded in a couple days.

2              THE COURT:  So you don't think it's necessary for

3    me to transfer it to another judge?  I mean -- I'm saying

4    that -- sir, I don't live in Toledo anymore.

5              MR. WINEMAN:  Yes.

6              THE COURT:  I'm what they call a helicopter judge.

7    I live in Northwestern Massachusetts, all four daughters

8    and families are out on the east coast.  And two years ago

9    we followed one of them back to Williamstown.  They were up

10   in Ann Arbor; however, ever since the electronic age I've

11   worked from home three or four days a week, so now I'm

12   doing it from 650 miles away instead of 15 miles away.  And

13   the only bump in the road, as long as a trial can be

14   completed within about four days, that's fine.  I can

15   handle that.  And so -- I would think so.

16             MS. TANGEMAN:  Absolutely.  Yes.

17             THE COURT:  I've had one of these, I think,

18   before, and that's about what it's taken.  And that's

19   absolutely fine.  I'm afraid not until January would be the

20   problem just because my own -- Deanna tells me that you'd

21   like perhaps 60 days and then another conference to set a

22   trial date.  I would like to give you a trial date now.  I

23   know my schedule until I take a summer recess the way they

24   used to in the Old King's Bench Day.  I have a fall term

25   and winter term, and then I try to get away for about six,

1   eight weeks in the summer time.  Still write opinions,

2   still make people unhappy, but in any event -- so let me

3   see, 60 days would basically be around mid -- mid December.

4           COURTROOM DEPUTY:  It would be January 7th,

5   Judge, for the next trial date.  And you have a civil date

6   and a --

7           THE COURT:  We'll talk about that, but what about

8   February, Deanna?  Tentative trial date for February?

9           COURTROOM DEPUTY:  February 4th you also have a

10  civil trial set for that --

11          THE COURT:  Those I'll transfer.

12          COURTROOM DEPUTY:  It would be February 4th, so

13  you would have a magistrate do voir dire on February 4th,

14  and then start trial on Tuesday.

15          THE COURT:  Have a magistrate do voir dire.

16  Tracey, what's the problem with that?

17          MS. TANGEMAN:  I'm in trial the following week.

18          THE COURT:  Is there somebody else who can cover

19  it?  Otherwise it would be March, and I just as soon

20  have -- I mean seriously.

21          MS. TANGEMAN:  I'll make it work then, it's fine.

22          THE COURT:  Somebody from Cleveland even, that's

23  fine.  I think Alissa tried the one I had before, I can't

24  remember.  But I realize it's going to gum up things in

25  your office, but I'd appreciate it.  Otherwise I'd have to

 1    transfer it to another judge, and I don't want to do that.

 2    They're eager to have trials.  I welcome trials.

 3              Sir, one thing you should understand, I took this

 4    job, as all of those people and my colleagues did, because

 5    we like to try cases, okay.  We're not a court where you

 6    should feel any apprehension or intimidation, somehow I'm

 7    going to be angry at you.  I'm sure your lawyer has

 8    indicated to you that in the event of a conviction, you

 9    will not be able to get what's called acceptance of

10    responsibility credit.  Do you understand that at all what

11    I'm saying?

12              THE DEFENDANT:  Yes, I do.

13              THE COURT:  Okay.  I mean, I'm not threatening

14    you.  I'm just saying that's a built-in consequence about

15    which I can do nothing.  But on the other hand, I'm not

16    going to be angry at you, okay.  Feel very strongly --

17    Ms. Tangeman has heard me say this, as everyone else has in

18    this courtroom, I feel very strongly that my obligation is

19    to see to it that both sides get a fair trial.  The

20    government gets a fair trial, you get a fair trial, okay?

21              THE DEFENDANT:  Yes, sir.

22              THE COURT:  And so don't -- but that is one

23    consequence if you are convicted, then the opportunity to

24    get, quote, acceptance of responsibility under the

25    sentencing guidelines is gone.  I know that because once I

1    had a case long ago, attorney will understand what I'm

2    saying, as Ms. Tangeman, pre-Booker, and young man stood

3    trial 31, 32 years old, DEA prosecutor begged him to

4    cooperate.  He refused to admit his involvement, the trial

5    was pretty much a lay down.  Government had the King to the

6    Ace of Spades.  He was convicted, and after conviction

7    counsel, in chambers just before sentencing, he finally

8    said, yeah, I guess kind of sort of maybe perhaps I did

9    something, and I found acceptance of responsibility.  But

10   took Sixth Circuit Judges Daughtrey, (Inaudible) and

11   Gilman, if I wanted to pick a panel, about a

12   page-and-a-half to tell me I couldn't do that, and I'm not

13   about to try it again.  But I'm sure you'll explain all

14   that to your client.

15          So my bottom line is I want you to understand I

16   don't care if you exercise the Constitutional right and go

17   to trial, or you make the decision not to go to trial.

18   That is your decision and yours alone to make.  Your lawyer

19   can be telling you to do one thing, but if you want to do

20   the other thing, only you can make your mind up in that

21   regard.  You understand that?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Okay.  I'm going to make a change of

24   plea deadline of December -- not -- offer change of plea,

25   indicated change -- if you change your mind back, doesn't

1    matter to me, then you'll have to notify the government and

2    The Court by December 10th, and we will have a pretrial on

3    the 17th to, you know, go from there.  Okay.  Do you

4    understand that?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  I'm sure your lawyer does too.  He

7    can explain that to you.

8              Counsel, a couple of things.  In the order today,

9    again, Ms. Tangeman is familiar with this, there'll be

10   several things.  One, that if the parties consent -- and

11   let me ask you this.  If you can let me know on the -- on

12   the 17th if you do -- if you and your client do consent to

13   the magistrate presiding voir dire.  Candidly, it's a

14   convenience to The Court.  As you may or may not know, the

15   lawyers do voir dire in this district -- in this division,

16   one of the probably three or four federal courts in the

17   country where the lawyers do the voir dire instead of the

18   courts.  We all agree up in a state system where that's

19   common place, that's the way it works, and that's the way

20   all committed to having it done.  It's your case, not our

21   case.  But when I was Magistrate Judge for 15 years, I

22   picked a lot of juries.  If not, you have a right to have

23   me preside at voir dire, the jury selection, or if you

24   agree and government agrees, our Magistrate Judge can

25   preside at voir dire.  Once again, I get paid no matter

1    what I do.  So if you want me to preside at voir dire,

2    that's fine.  Okay.  You understand that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  The -- any motions in limine will be

5    due not later than two weeks before trial, and then the

6    opposition will be due one week before trial.  I try to

7    decide those before trial so everybody knows what's in and

8    what's out in that regard.  And I welcome any -- certainly

9    any substantive or substantial issue by way of motion in

10   limine that you see.  The earlier you get it to me, the

11   better.  That's fine with me, just so I can get it decided,

12   especially if there's a Daubert issue.  If there's some

13   sort of computer forensic expert that either of you have --

14   have decided to retain.  I think I'm going to make expert

15   reports, if any, due by the 17th.  Let's do this, expert

16   reports, if any, will be due by December 1st.  Motions in

17   limine will be due by -- I'm just trying to think.  I'll

18   make it due by December 10th, pretrial on the 17th.  I'll

19   give you a fairly brisk briefing schedule, then if there

20   are any such motions.  The parties to exchange witness

21   lists two weeks before trial and propose jury instructions

22   to be submitted before trial.  Government has a set of the

23   instructions that I've given in the past.  All I need from

24   counsel is the core instruction on the elements of the --

25   the government's burden of proof of the charge and the

1    elements of any defense.  I've got what I call wrap around,

2    which is standard, you know, what evidence is, don't be

3    looking at social media.  Keep an open mind and so forth

4    instructions.  Ms. Tangeman, is there anything else that I

5    do by way of pretrial order, or Deanna?

6              MS. TANGEMAN:  Well, Your Honor, just for

7    clarification, what time on December 17th are we doing that

8    final pretrial?

9              COURTROOM DEPUTY:  9:30.

10             THE COURT:  And counsel, that can be by telephone

11   if you wish.  You are from?

12             MR. WINEMAN:  Norwalk, Your Honor.

13             THE COURT:  Okay.

14             MS. TANGEMAN:  And then, Your Honor, what day are

15   the joint proposed instructions due?

16             THE COURT:  Just two weeks before trial if you

17   would.  And counsel, candidly, I'm likely to give whatever

18   the government's had us give here before.  You're obviously

19   welcome to make an objection -- I'm not -- it's not an iron

20   bound thing, but it's just, you know, seems to work so far.

21             Is there a pattern, Tracey, Sixth Circuit pattern

22   on that?

23             MS. TANGEMAN:  I believe so, yes.

24             THE COURT:  By default of course is the Sixth

25   Circuit pattern.  They tell me it's okay, I'm going to give

1   it no matter how bad it may be.  Anything else, Tracey,

2   that I usually --

3           MS. TANGEMAN:  I think just the JERS exhibits,

4   and those are typically due the week before trial.

5           THE COURT:  Yeah, the exhibits you can exchange a

6   week before trial, let's make it two weeks before trial,

7   Tracey, if that's okay.

8           MS. TANGEMAN:  Yes.

9           THE COURT:  Just mark and exchange any exhibits,

10  okay.  Anything else from the government?

11          MS. TANGEMAN:  No, Your Honor.  Thank you.

12          THE COURT:  Counsel, anything else?

13          MR. WINEMAN:  No, Your Honor.  Thank you.

14          THE COURT:  You are aware, I assume, that my

15  predecessor Judge Young was a fifth generation lawyer in

16  the Fireland's of Norwalk --

17          MR. WINEMAN:  Yes, that's correct.

18          THE COURT:  I don't know if his name is still

19  revered over there as it is in this courthouse and among

20  the lawyers who used to appear in front of him.  Wonderful,

21  great man.

22          MR. WINEMAN:  Great man.

23          THE COURT:  He was.  His engagement present to

24  his wife was a harpsichord, one of two that he built in his

25  lifetime.

```
 1                 MR. WINEMAN:  Yeah, I had heard that.

 2                 THE COURT:  Pardon?

 3                 MR. WINEMAN:  I had heard that from Henry, his

 4      cousin.

 5                 THE COURT:  And he knew every word to every

 6      Gilbert and Sullivan -- and he knew the chemical

 7      composition of every piece of candy in his jar.  True

 8      Renaissance man and wonderful judge.  Very proud of his

 9      heritage.  His family is one of the original settlers in

10      the Fireland's.

11                 MR. WINEMAN:  That's right.

12                 THE COURT:  Okay.  And his son, I'll tell you one

13      more quick story.  That portrait, there was a match pair of

14      Mrs. Young, lovely woman, and The Judge in their house in

15      Huron, and he had -- my family and myself out two or three

16      times during the holidays.  He had an electric train set

17      from about 1910, electric bulbs on the trees that were

18      family, and I remember seeing that portrait.  And after he

19      had passed away and I became a District Judge, I wanted to

20      have that -- a copy made to hang where it does, so he looks

21      at us.  He winks every now and then, and every now and then

22      he shakes his head, but nobody else can see that but us.

23      So anyway, after he passed away I called his son,

24      unfortunately he died quite young, and asked him if I could

25      have that portrait to have a copy made of it.  He said
```

1    fine.  Well, in 19 -- in 2012 or so, I was about, I had --

2    I was in my then chambers, I had a bunch of posters that I

3    had up in the jury room that another judge took down about

4    the American Trial Lawyers Association, about the

5    significance of your right to trial by jury, and portraits

6    of the Jefferson and the people, you know, who had said how

7    important jury -- I'm going through that and I find the

8    original portrait of Judge Young.  Nobody had called.  A

9    couple of weeks later, I'm in Laredo, Texas, going to

10   border court sentencings in immigration cases, drug cases,

11   the young AUSA is D.J. Young, and that's what they used to

12   call his grandson, D.J, they were all Don, Don J., not

13   Donald.  He'd get very upset when The Blade would refer to

14   Donald Young.  I said, Mr. Young, come over, was your

15   grandfather a U.S. District judge in Toledo.  He said yes.

16   I told him about that portrait.  I said, I know your dad

17   passed away, nobody called.  I'd like to get ahold of your

18   mother.  He said, well, Judge we're coming up in the

19   summer, he and his family came up in the summer, so I was

20   able finally -- and also tell him and his grandchildren

21   about people who remember, generation -- generation older

22   or two than they about his grandfather and great

23   grandfather.  All coincidence.  But you can imagine how far

24   beneath my shoes my heart had sunk when I saw that.

25   Anyway, he's smiling right now, by the way.  Okay.  Enough

```
 1   of the history.  Anything further for government,

 2   Ms. Tangeman?

 3            MS. TANGEMAN:  No, Your Honor.  Thank you.

 4            THE COURT:  Counsel, anything further?

 5            MR. WINEMAN:  Gives me something to take back to

 6   Norwalk, though.

 7            THE COURT:  Counsel, I assume you're retained,

 8   but if funds get tight, I have absolutely no problem of

 9   appointing you under CJA, especially if you need to retain

10   an expert or whatever.  Just talk to Deanna.

11            MR. WINEMAN:  Yes.

12            THE COURT:  It's not my money, it's your money.

13   Okay.

14            MR. WINEMAN:  Thank you.

15            THE COURT:  See you in December.

16                            - - -

17                 C E R T I F I C A T E

18

19            I certify that the foregoing is a correct transcript

20   from the record of proceedings in the above-entitled matter.

21

22   s:/Angela D. Nixon            November 25, 2020

23   --------------------------            -----------

24   Angela D. Nixon, RMR, CRR       Date

25
```